FILED

2021 Mar-16  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

EDWARD RONALD "BEAU" JONES,

     Plaintiff,

v.                                                            Civil Action No.:

COUNTY OF LIMESTONE, ALABAMA                **Jury Trial Demanded**

(LIMESTONE COUNTY COMMISSION);

SHERIFF MICHAEL ANTHONY BLAKELY,

in his individual and official capacities;

CHIEF DEPUTY FRED SLOSS;

in his individual and official capacities;

PATROL CAPTAIN GUY SIMMONS;

in his individual and official capacities;

INVESTIGATOR JAMIE KING,

in his individual and official capacities;

DEPUTY JAKE ABERNATHY,

in his individual and official capacities;

SRT COMMANDER RHETT MCNATT,

in his individual and official capacities;

DEPUTY CALEB RYAN,

in his individual and official capacities;

CORRECTIONAL OFFICER JOHN DOE,

in his individual and official capacities;

CORRECTIONAL OFFICER JIM DOE,

in his individual and official capacities;

CORRECTIONAL OFFICER JAMES DOE,

in his individual and official capacities;

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Edward Ronald Jones, by and through his undersigned counsel, Michael C. Lambert, respectfully alleges for his Complaint and Demand for Jury Trial as follows:

## I.      INTRODUCTION

1.     This action arises out of the Limestone County Sheriff's Department (hereinafter "LCSD") trespass, false arrest/unlawful seizure of and excessive force against Plaintiff Edward Ronald "Beau" Jones (hereinafter Mr. Jones), on or about March 17, 2020, and Mr. Jones's subsequent illegal detainment/false imprisonment and excessively forceful treatment at the hands LCSD employees at the Limestone County Jail located at 101 West Elm Street, Athens, Alabama (the "Jail").

2.     Defendants unlawfully entered the home of Mr. Jones on March 17, 2020, located at 19429 Upper Fort Hampton Road, Elkmont Alabama (hereinafter the "Property").

3.     Defendants unlawfully entered Mr. Jones' room within the Property on March 17, 2020.

4.     Defendants unlawfully seized/arrested Mr. Jones while performing a "knock and talk" regarding alleged drug use at his home and then took him to jail where he was falsely imprisoned and placed on suicide watch for approximately a week and a half.  Defendants, acting as agents of LCSD and supervisors thereof, violated the

rights of Mr. Jones which are guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution as well as his rights under the Americans with Disabilities Act.

5.     Defendants maliciously prosecuted Mr. Jones for allegedly assaulting the deputies who attacked him and resisting arrest.   Defendants maintained their malicious prosecution action for eleven months, give or take, before the case was dismissed with prejudice.

6.     Had the Limestone County Commission for Limestone County, Alabama (hereinafter "the Commission") exercised even a modicum of oversight regarding law enforcement training and refresher courses on basic civil rights, none of the Civil Rights violations against Edward Ronald Jones would have happened.

## II.     JURISDICTION AND VENUE

7.     This action arises under the Constitution and laws of the United States and the State of Alabama, and is brought pursuant to Title 42 U. S. C.  § 1983.

8.     Jurisdiction is conferred on this Court pursuant to 28 U. S. C. § 1331.

9.     Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U. S. C. § 1988.

10.     Venue is proper in the District of Northern Alabama pursuant to 28 U. S. C. § 1367.   The primary counts alleged herein by Mr. Jones against the Defendants deal with federal causes of action.   All of the events alleged herein occurred within

the State of Alabama, and all of the parties were either residents of the State of Alabama or working within the State of Alabama at the time of the events giving rise to this litigation.

## III.   PARTIES

**Plaintiff**

11.    Plaintiff, Edward Ronald "Beau" Jones, is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Alabama.

**Defendants**

12.    The Limestone County Commission for Limestone County, Alabama (the Commission) is a governmental entity chartered under the laws of the State of Alabama.   It is responsible for the budget for the Limestone County Sheriff's Department (hereinafter "LCSD") including but not limited to what funds are allocated for what purpose year after year.   It is located at 310 West Washington Street, Athens, Alabama 35611.

13.    Sheriff Michael Anthony Blakely (hereinafter "Blakely") was the Sheriff of Limestone County, Alabama and was currently under indictment for multiple counts of theft of property and use of his official position or office for personal gain.

14.     Investigator Jamie King (hereinafter "King") was a narcotics investigator for LCSD.

15.     Chief Deputy Fred Sloss (hereinafter "Sloss") was second in command of LCSD.

16.     Captain Guy Simmons (hereinafter "Simmons") was an officer for LCSD.

17.     Special Response Team Commander Rhett McNatt (hereinafter "McNatt") was a commander for LCSD.

18.     Deputy Jake Abernathy (hereinafter "Abernathy") was a deputy sheriff for LCSD.

19.     Deputy Caleb Ryan (hereinafter "Ryan") was a deputy sheriff for LCSD.

20.     Correctional Officers John Doe, James Doe, and Jim Doe were correctional officers for LCSD.

21.     At all times relevant to this Complaint, Defendants were citizens of the United States and either resident of and domiciled in the State of Alabama or employees of LCSD in the State of Alabama.  Each was acting in his capacity for the LCSD.  The Commission was at all times responsible for the authorizing training and budget for said training of LCSD.

## IV.    FACTUAL ALLEGATIONS

### A.    MR. JONES'S LIFE

22.     Mr. Jones was born in Athens, Alabama on November 6, 1986.

23.    At the time of his unlawful arrest and detainment, Mr. Jones was 33 years old.

24.    Mr. Jones was raised in Limestone County, Alabama.

25.    From December, 2008 until January, 2014, Mr. Jones was a member of the United States Marine Corps on active duty.  Mr. Jones was given a general discharge under honorable conditions on September 19, 2011.  During his service, he was awarded the Sea Service Deployment Ribbon, the Afghanistan Campaign Medal, the Global War on Terrorism Service Medal, the Armed Forces Reserve Medal, the NATO medal, the Rifle Expert Badge, and the National Defense Service Medal, and was deployed to Afghanistan under Operation Enduring Freedom.

26.    Upon his discharge from the Marines, Mr. Jones returned to Limestone County, Alabama, where he discovered his wife had been unfaithful to him while he was on deployment.  As a result, he became involved in divorce proceedings and found it difficult to re-adapt to civilian life.

27.    Mr. Jones was diagnosed with depression, PTSD, hearing loss, and tinnitus by the VA.

28.    Mr. Jones was arrested for Possession of a Controlled Substance in 2015 and completed a diversion program ("Drug Court") to assist him in breaking his

addiction given his medical problems.  He was successful in the program and the case was dismissed.

29.    At the time of his unlawful arrest, Mr. Jones was residing at the home of his grandmother, Ruth Dawson (hereinafter "Ruthie") in Limestone County, Alabama.

30.    Also, on the night of his unlawful arrest, Mr. Jones was peacefully sitting in his room sanding his guitar.

31.    Ruthie left her home shortly after Mr. Jones' false imprisonment because she did not feel safe living alone.

32.    In the months following his arrest and detainment, Mr. Jones has successfully maintained employment and continued to rebuild his life as best as he can with the continued fear of retribution from LCSD.

## B.    TRESPASS BY THE DEFENDANTS

33.    At approximately 6:45 p.m. on March 17, 2020, Investigator Jamie King ("King") arrived at the home of Mr. Jones upon receiving a call of suspected drug use.

34.    Initially, King was accompanied only by Abernathy, who wore a body camera.

35.    Said body Camera footage was produced to Mr. Jones' criminal defense attorney, the Honorable Sherry Phillips (hereinafter "Phillips").  Said footage was admitted into evidence without objection at the hearing regarding Mr. Jones'

motion to dismiss criminal charges of assault and resisting arrest, State of Alabama Case number 44-CC-2020-000346.00 (hereinafter "the State Case").

36.     Upon arrival at the Property, King and Abernathy were met by Mike Jones, Mr. Jones' father.

37.     Mike Jones told King and Abernathy he saw Mr. Jones place a flame under a spoon on the front porch of the Property and go back inside.

38.     Mike Jones stated he (Mike Jones) did not live at the Property.

39.     Mike Jones then stated he did not know who owned the Property.

40.     Whereupon King stated to Mike Jones, this (the Property) is family property, right?  To which Mike Jones said yes.

41.     King followed up with you (Mike Jones) give us permission to go in, right? To which Mike Jones replied yes.

42.     Mike Jones explained that a side door closest to the deputies would lead back to where Ruthie's room was located.

43.     Then, Mike Jones said I don't think he's (Mr. Jones) armed.

44.      Mike Jones then explained the front door was closest to Mr. Jones' room.

45.     A subpoena for EMS records in the State Case sent by Phillips revealed that no 911 call was made to the Property's address on the date that made the basis of this complaint.

46.     Abernathy, with King leading the way, entered the Property with weapons drawn.

47.     The entrance to Mr. Jones' room was on the left side a short distance straight down an entry hallway from the front door entered by King and Abernathy.

48.      As King and Abernathy came to the opening of Mr. Jones' room, they aimed their weapons at Mr. Jones while saying "What's up, Beau?"

49.     Body camera footage clearly evidences the sanding, which can be heard prior to and throughout the altercation.

50.     Abernathy and King chose to sneak up on Mr. Jones rather than announce their presence.

51.     King knew that he and Mr. Jones did not like one another as evidenced through King's testimony in the State Case.

52.     King knew or should have known that Mr. Jones suffered from PTSD; thereby making an unlawful entry into the home a potentially dangerous situation for all involved.

53.     Upon realizing someone was in his home about to enter his room, Mr. Jones picked up a knife and retreated behind a table in said room.

54.     At no point in time did Mr. Jones advance on anyone from LCSD or attempt to stab them.

55.    Over the next 1.5 hours all the defendants arrived at the Property except Blakely and the Commission.

56.    Mr. Jones repeatedly asked the Defendants to leave the home and refused to grant any of them entry into his bedroom.

57.    At no point in time did Mr. Jones cross or attempt to cross the threshold of his bedroom.

58.    King would later write in his official report that the suspect "became irate and charged deputies with a knife."  Body camera footage shows King's statements to be untrue.

59.    At least twice during his interaction with LCSD, Mr. Jones inquired as to whether he was being detained.  On one occasion King stated, "I didn't say I was going to take you to jail," and a few minutes later, King said, "there's no reason for you to go (to jail)."

60.    Mr. Jones asked King if he saw or smelled drugs.  King responded that he did not.  At this point, the knock and talk should have ended and law enforcement should have either left the home or requested a search warrant.

61.    Instead of leaving the residence as requested, King continued to communicate with Mr. Jones without reading him his Miranda rights.  After a few minutes, Mr. Jones became calm, was speaking coherently, and continued to request to be left alone.

62.     At some point in time, other employees from LCSD were called to the home to assist.  It is unclear whether anyone on the scene attempted to look for the drugs and/or paraphernalia that Mr. Jones's father said he saw; however, it is clear that none were found and none were taken into evidence.

63.     Despite there being no reason to arrest Mr. Jones, body camera footage shows where deputies are planning to rush the Mr. Jones to remove him from the home and one of the deputies gives the order to another deputy that "You may need to be prepared to put a round in him if he gets squirrely."  Additionally, footage clearly shows that law enforcement left an unattended shotgun beside the door where they were trying to remove Mr. Jones from the home.

64.     Next King places a phone call to Blakely to coerce an inmate at the Limestone County Jail to bait King close to the open door to his room.  Blakely knew that the other defendants had no basis to be in Mr. Jones' home much less to bait him to come near the entrance to be attacked by the defendants.

65.     King attempted to lure Mr. Jones out of his bedroom and Mr. Jones refused to come anywhere near King.  King requested that Mr. Jones "step on over here towards me," to which Mr. Jones responded, "What do you want me to come over there for?  So you can give me a (expletive) hug?"  Mr. Jones continued to stand his ground and remained in his bedroom.

66.    King placed his cell phone inside Mr. Jones' room once he has an inmate on the phone with whom Mr. Jones had romantic interest in.

67.    King further baits Mr. Jones stating "don't you want to have a private conversation?" and offers to take the phone off-speaker.

68.    The moment Mr. Jones hands the phone near the threshold of his room to King, he (King), Abernathy, Sloss, and one other deputy cross into Mr. Jones' room without permission or authority.

### C.    UNLAWFUL ARREST/SEIZURE OF MR. JONES

69.    Blakely, Simmons, Sloss, and McNatt outranked the other deputies on scene and both approved and help plan the seizure of Mr. Jones.

70.    It became obvious during the conversation that King and Mr. Jones had a history and that Mr. Jones believed that King had been harassing him on several prior occasions.

71.    Mr. Jones stated at one point that he had called the Alabama Bureau of Investigation (ABI) on King on a prior occasion, and that led Mr. Jones to believe the harassment was retaliation for having King investigated previously.

72.    Prior to the arrest, Mr. Jones inquired of King, "What have I done illegal?" and was told "I don't know that you've done anything illegal." Still, King and the others beat him and arrested him.

73.    At approximately 1 hour, 40 minutes into the video, LCSD employees meet outside the home of Mr. Jones and discuss the "three options," which were "(1)Chief's (Fred Sloss) gonna talk to him.  Maybe he'll come out, probably not; (2)Leave him here, get grandma and family and move all them out, leave him here by himself, get him another day; and (3)Number three is we'll use that "big orange shotgun right there," pointing to a shotgun which had been left unattended next to the door.  Almost a minute later, Abernathy, who had been standing inside the entire time and was the one wearing the body camera, told Simmons that when Mr. Jones got up to get his phone a few moments earlier that was the first time he'd gotten up.

74.    Mr. Jones was beaten and choked to the ground in his room by King, Abernathy, Sloss and one other deputy while being placed under arrest.

75.    Mr. Jones was arrested and charged with (and later indicted on) one count of Resisting Arrest and two counts of Assault "with intent to prevent a peace officer…from performing a lawful duty."  There were no drug charges or other underlying charges to justify the charge of Resisting Arrest.

76.    The Alabama statute for resisting arrest, §13A-10-41(a) of the Code of Alabama (1974), states "A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person."  Alabama courts have consistently upheld

that a person may use reasonable force to resist an unlawful arrest.  *Spooney v. State*, 115 So. 308 (1928), *Sanders v. State*, 61 So. 336 (1913), *Adams v. State*, 57 So. 591 (1912), *Green v. State*, 189 So. 763 (1939), *Brown v. State*, 20 So. 103 (1895).  According to the Alabama Code, an element of assault is intent to cause serious physical injury.

77.    Mr. Jones did not intend to cause any injury to law enforcement.  In fact, he was placed in a headlock by one of the deputies to the point that he lost consciousness and was unable to resist.  Mr. Jones can be heard at one point asking why he was being charged with assault when they were the ones that came in to his home and attacked him.

78.    While being placed under arrest, King punched Mr. Jones; however, due to him losing consciousness, Mr. Jones is unsure of how many times this occurred.

79.    Due to the excessive force used during the false arrest, Mr. Jones's PTSD was triggered, causing him to tell King and other deputies to "(expetive) shoot me" and repeatedly tell them to leave the home.  Additionally, Mr. Jones stated that he would rather King kill him than take him to jail again.  Mr. Jones asked King repeatedly to put the gun down.

80.    At approximately 1 hour 42 and one-half minutes into the footage, King advises LCSD that Mr. Jones did not have a weapon on him.  However, they continued to make plans to arrest Mr. Jones and remove him from his home.

81.     The second clip of body camera footage given to Mr. Jones's defense attorney shows the arrest being made.  Although an employee of LCSD would later write in his official report that Mr. Jones was reaching for a weapon during the altercation, the footage clearly shows that Mr. Jones had both his arms held stiffly out in a defense position in an attempt to push King off him.  With this stance, it would have been impossible for Mr. Jones to reach for anything.  Upon Sloss entering the room and placing Mr. Jones in a headlock, Mr. Jones began to yell that someone was hurting his head and that he could not breathe.  It was somewhere during this time that Mr. Jones lost consciousness.

### D.  MR. JONES UNLAWFUL IMPRISONMENT/DETAINMENT

82.     Once detained at his home, Mr. Jones was illegally taken to the Limestone County jail by two of the defendants.

83.     Once at the Limestone County Jail where Mr. Jones was transported without incident, he was threatened by James Doe and John Doe.

84.     Upon being led into the Limestone County Jail, Mr. Jones was forcibly strip searched by James Doe Jim Doe, and John Doe while a Taser was held to his neck.

85.     After being booked, Mr. Jones was held for more than a week on "suicide watch" and not allowed to see his attorney.

86.     Mr. Jones was never taken to a mental health professional.  He was seen by the jailhouse nurse who did not have the expertise to diagnose anything regarding

his condition.  The nurse, as an employee of Blakely, did not record any of the

injuries sustained by Mr. Jones during his arrest and detention.

### E.    MALICIOUS PROSECUTION OF MR. JONES

87.    Mr. Jones was indicted for two counts of assault in the second degree for

"attacking King and Abernathy" and "resisting arrest."

88.    None of King's and Abernathy's supervisors requested at any time that the

charges be dropped.

89.    The charges and bond conditions of Mr. Jones' release hung around his neck

like an anchor for almost one year.

90.    The lack of training, knowledge, and oversight for Blakely's nearly

$9,000,000.00 budget authorized by the Limestone County Commission is

stunning.

91,    Blakely does not even have a "patrol guide" where his officers can refer

back to Constitutional Standards of Behavior as peace officers and state actors.

92.    The Commission has had little to no oversight on the corruption in

Limestone County government from a Limestone County District Judge convicted

of stealing form a juvenile fund, Limestone County school superintendent indicted

for corruption and conspiracy, to Blakely's indictment for theft and using his

position for personal gain.  All while one Limestone County commissioner owns a

race horse with Blakely, claiming no conflict of interest exists.

## STATEMENT OF CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violation –

## Failure to Intervene in Unlawful Seizure / False Arrest

## (Against Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy,

## Ryan)

93.     Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

94.     Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

95.     At no relevant time did any of Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, and Ryan, with more than one hour to determine that they had no probable cause, reasonable suspicion, or any other legally valid basis to believe that Plaintiff had committed or was committing any violation of the law, attempt to intervene on the seizure and illegal restraint of the Plaintiff's person.

96.     At no relevant time did plaintiff give consent for Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan to enter his residence.

97.     At no relevant time did plaintiff give consent for Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan to enter his room within his

residence.

98.    At no relevant time did Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan have a reasonable basis to believe the Plaintiff was an imminent danger to himself or others.  No exigent circumstances existed justifying the Defendants' unlawful entry.

99.    At no relevant time did Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan have a valid arrest warrant for the Plaintiff or a search warrant for his residence.

100.   During the seizure at issue, Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan failed to intervene and prevent one another from arresting the Plaintiff and from using excessive force when no legal basis for the arrest existed at any relevant time.

101.   Defendants Sloss, King, Abernathy, and Ryan entered Plaintiff's room grabbing him, placing him in a choke hold, and punching him repeatedly as they forced him to the ground.  Plaintiff could not breathe and lost consciousness during the attack.

102.   Defendants Blakely's, Sloss', Simmons', McNatt's, Abernathy's, King's, and Ryan's actions were objectively unreasonable in light of the circumstances confronting them and violated clearly established law which reasonable officials in their position would have known.

103.  Plaintiff suffered physical and mental health damages from the lack of intervention by Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan.

## SECOND CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Fourth Amendment Violation –

## Unlawful Seizure / False Arrest

## (Against Defendants Blakely, Simmons, McNatt, and Limestone County Commission as supervisors and against Sloss, King, Abernathy, and Ryan directly)

104.  Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

105.  Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

106.  At no relevant time did any of Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, and Ryan have any probable cause, reasonable suspicion, or any other legally valid basis to believe that Plaintiff had committed or was committing any violation of the law prior to their failure to intervene the seizing and illegally restraining his person.

107.  At no relevant time did Plaintiff give consent for Defendants Sloss,

Simmons, McNatt, King, Abernathy, and Ryan to enter his residence.

108. At no relevant time did Plaintiff give consent for Defendants Sloss, Abernathy, King, and Ryan to enter his room within his residence.

109. At no relevant time did Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan have a reasonable basis to believe the Plaintiff was an imminent danger to himself or others. No exigent circumstances existed justifying the Defendants' unlawful entry.

110. At no relevant time did Defendants Blakely, Sloss, Simmons, McNatt, Abernathy, King, and Ryan have a valid arrest warrant for plaintiff or a search warrant for Plaintiff's residence.

111. Defendants Sloss, King, Abernathy, and Ryan entered Plaintiff's room without cause and without legal right to do so, grabbing the Plaintiff, placing him in a choke hold, and punching him repeatedly as they forced him to the ground. Plaintiff could not breathe and lost consciousness during the attack.

112. Plaintiff was taken to one of the Sheriff's vehicles and transported to the Limestone County Jail.

113. Defendants checked on King to make sure he was okay and uninjured but made no such check of the Plaintiff.

114. Defendants Blakely, Sloss, Simmons, and McNatt were supervisors for King, Abernathy, and Ryan at all times relevant to this complaint.

115.   Defendant Sloss personally participated in the unlawful arrest of Plaintiff.

116.   Defendants Blakely, Simmons, McNatt, and Sloss directed King, Abernathy, and Ryan to take the above referenced actions resulting in the false arrest of the Plaintiff.

117.   Defendants Blakely, Simmons, McNatt, and Sloss knew King, Abernathy, and Ryan would take the actions portrayed herein above in the false arrest of the Plaintiff.

118.   The Limestone County Commission knows of the lack of training, reference material, and standard operating procedures in the LCSD that would have prevented this conduct.

119.   Plaintiff suffered and continues to suffer mental and emotional damage from the attack of Defendants Sloss, King, Abernathy, and Ryan.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourth Amendment Violation –**

**Malicious Prosecution**

**(Against Defendants Blakely, Simmons, McNatt, and Sloss indirectly as supervisors and Blakely, Sloss, Simmons, King, and Abernathy directly)**

120.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

121.   Defendants Blakely, Sloss, Simmons, McNatt, King, and Abernathy were all

acting under color of state law in their actions and inactions at all times relevant to this action.

122.   At no relevant time did Defendants Blakely, Sloss, Simmons, McNatt, King, and Abernathy have probable cause to either file or maintain a criminal prosecution against the Plaintiff for two counts of assault in the second degree or resisting arrest.

123.   King admitted he and Mr. Jones did not like one another and that he and Abernathy walked in without announcing himself as law enforcement with guns drawn.  Further King admitted he had no probable cause, i.e. he did not see or smell any drugs, and neither did any other law enforcement official on the day in question.

124.   At all times relevant to this action, Defendants King, Abernathy, Sloss, and Ryan acted with malice when they intentionally crossed into Mr. Jones' room without any legal right to do so.  Malice can, but does not require, personal ill-will, hate, or desire to harm another person.  In this case, however, King admitted under oath he did not like Mr. Jones before entering the Property.

125.   Defendants Blakely, Sloss, Simmons, McNatt, King, and Abernathy acted wantonly in the continued prosecution of Mr. Jones when at any time in the eleven months since Mr. Jones' arrest, they could have requested the District Attorney drop the case against the Plaintiff.  Phillips repeatedly asked the District Attorney

to drop the case and was told that King wanted Mr. Jones in prison and that it could not be dismissed for that reason.

126.   Defendants Blakely, Sloss, Simmons, and McNatt, as supervisors over King and Abernathy, knew they maintained the malicious prosecution action in violation of Plaintiff's Fourth Amendment rights.

127.   Further, Defendants Blakely, Sloss, Simmons, McNatt, King, and Abernathy had access to the body camera footage at all times and could have reviewed the same to determine their error in judgment and the law.

128.   The trial court Judge, the Honorable Judge Robert Baker, dismissed the assault charges and resisting arrest charge against the Plaintiff labeling the situation an illegal arrest.

129.   Plaintiff suffered and continues to suffer form anxiety, depression, and an exacerbation of his PTSD due to the prosecution, bond conditions, and fear of retribution after his exoneration in the State Case against him.

## FOURTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Fourth Amendment Violation –

## Excessive Force (Arrest)

## (Against Defendants Blakely, Simmons, McNatt indirectly as supervisors and ,

## Sloss, King, Abernathy, and Ryan directly as perpetrators)

130.   Plaintiff incorporates all other paragraphs of this complaint as if fully set

forth herein.

121.   Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

122.   At the time Plaintiff was unlawfully seized, taken to the floor, choked, punched, had his oxygen cut off so that he lost consciousness, handcuffed, and forced into a Sheriff's vehicle by Sloss, King, Abernathy, and Ryan, Plaintiff had a clearly established Constitutional right to be secure in his person from unreasonable seizure through excessive force.

123.   Any reasonable law enforcement officer knew or should have known of this clearly established right.

124.   Defendants Sloss, King, Abernathy, and Ryan engaged in use of force that was objectively unreasonable in light of the facts and circumstances confronting them, violating the Plaintiff's Fourth Amendment rights.

125.   Blakely, Simmons, McNatt, and Sloss, as supervisors, knew other options were available.  Simmons actually spoke as captured on body camera that they could leave and pick up the Plaintiff later.  No grounds were ever discussed on the basis such an arrest could be made.

126.   Instead, Defendant Simmons suggested to McNatt in front of Sloss, King, and Abernathy to "put a round in him" (Mr. Jones) if he gets squirrelly.

127.   The acts and omissions of each Defendant described herein were the legal and proximate cause of Mr. Jones' injuries.

128.   Mr. Jones suffered pain, humiliation, and mental distress, resulting in exacerbation of his PTSD and depression.

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourteenth Amendment Violation of Due Process–

### Excessive Force (Arrest)

### (Against Blakely, Simmons, McNatt, Sloss as supervisors, and Sloss, King, Abernathy, and Ryan directly)

129.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

130.   Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

131.   At all times relevant to this case, no lawful arrest was made of the Plaintiff, Mr. Jones.

132.   Under the Fourteenth Amendment to the United States Constitution, every person has the right to due process of law meaning not subjected to excessive or unreasonable force while being arrested by a law enforcement officer—even though the arrest is otherwise made in accordance with the law, which the

Plaintiff's arrest was not.

133.   Any reasonable law enforcement officer knew or should have known of this clearly established right.

134.   Defendants Blakely, Sloss, Simmons, and McNatt, as supervisors, assisted and planned for the take down of the Plaintiff despite him breaking no laws.

135.   Defendant Blakely directly authorized a county inmate to be used as bait while Simmons made plans to take the Plaintiff down, including, but not limited to, shooting him.

136.   All the above actions were done in front of and with the approval of Defendants McNatt and Sloss.

137.   Defendants Sloss, King, Abernathy, and Ryan crossed into the Plaintiff's room without any legal right to do so and proceeded to beat and choke him into unconsciousness.

138.   At all times, Defendants Blakely, Simmons, Sloss, and McNatt were supervisors of Abernathy, King, and Ryan.

139.   The Defendants' actions herein were the legal and proximate cause of the Plaintiff's physical and mental injuries, including, but not limited to his increased anxiety, exacerbation of his PTSD, and exacerbation of his depression.

# SIXTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Fourth Amendment Violation –

## Excessive Force (Pretrial Detainee)

## (Against Blakely and Limestone County Commission, as supervisor, and Jim Doe, James Doe, and John Doe directly)

140.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

141.   Defendants Blakely, Jim Doe, James Doe, and John Doe were all acting under color of state law in their actions and inactions at all times relevant to this action.

142.   Correctional Officers James Doe, Jim Doe, and John Doe held a Taser to Plaintiff's neck and forcibly strip searched him instead of asking him to remove his clothes in violation of Plaintiff's Fourth Amendment Right against excessive or unreasonable force during his pretrial detention.

143.   Defendant Blakely was the supervisor of Correctional Officers James Doe, Jim Doe, and John Doe at all times relevant to this action.

144.   Limestone County Commission is the supervisor of Blakely and all LCSD activities through its budget process.

145.   Neither Limestone County Commission nor Blakely have a standard operating procedure or guide manual regarding handling the handling of inmates

with the Limestone County Jail.

146.   Any reasonable law enforcement officer and County Commissioner knew or should have known of this clearly established right and the need for standards to be set for the housing of inmates in a county jail.

147.   Defendants James Doe's, John Doe's, and Jim Doe's actions were not reasonable in light of the circumstances of the Plaintiff who suffered from PTSD, depression, and anxiety.

148.   As a direct result of his injuries, Plaintiff began to have thoughts of self-harm, his PTSD was exacerbated, and his anxiety and depression have been made worse.

149.   Plaintiff was never given any mental help or even allowed to see a mental health care provider such as a psychologist or psychiatrist.

## SEVENTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Fourteenth Amendment Violation of Due Process of Law–**

**Excessive Force (Pretrial Detainee)**

**(Against Blakely and Limestone County Commission, as supervisor, and Jim**

**Doe, James Doe, and John Doe directly)**

150.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

151.   Defendants Blakely, Jim Doe, James Doe, and John Doe were all acting

under color of state law in their actions and inactions at all times relevant to this action.

152.   Under the Fourteenth Amendment to the United States Constitution, every person has the right to due process of law to not be subjected to excessive or unreasonable force during his pretrial detention by a law enforcement officer.

153.   Any reasonable law enforcement officer and County Commissioner knew or should have known of this clearly established right and the need for standards to be set for the housing of inmates in a county jail.

154.   Without clearly established guidelines for handling inmates with PTSD, anxiety, and depression,  such as through a standard operating procedure that could identify persons like the Plaintiff  (who had previously completed drug court and his conditions been previously identified), excessive force can more readily happen.

155.   Neither Blakely nor the Limestone County Commission took reasonable measures to ensure that James Doe, Jim Doe, and John Doe were properly trained, educated, or supervised to prevent them from forcibly strip searching the Plaintiff while holding a Taser to his neck.

156.   Plaintiff's PTSD, anxiety, and depression were exacerbated giving him suicidal thoughts while being denied mental health care.  Plaintiff continues to suffer from the trauma he experienced at the Limestone County Jail.

## EIGHTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Fourth Amendment Violation–

## Trespass – Right to Privacy

## (Against Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan)

157.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

158.   Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

159.   At all times relevant to this action, no legal authority was obtained for entry into the residence of the Plaintiff including, but not limited to, a search warrant and/or arrest warrant.

160.   Defendant King admitted in the State Case that he had no probable cause to obtain a search warrant or arrest warrant regarding the plaintiff or the Property.

161.   Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan entered the Plaintiff's home electronically and physically in violation of his right to privacy under the Fourth Amendment.

162.   Any reasonable law enforcement officer knew or should have known of this clearly established right.

163.   Several items were broken when Defendants Sloss, King, Abernathy, and Ryan trespassed into Plaintiff's room and assaulted him.

164.   Plaintiff suffered and continues to suffer exacerbation of his PTSD, anxiety, and depression from the trauma he suffered at the hands of the Defendants.

165.   Plaintiff does not feel safe, even though he now resides in another county.

### NINTH CLAIM FOR RELIEF

### STATE LAW CLAIM

### Libel – Untruthful Statements made for Publication

### (Against one or more of the Defendants listed herein above)

166.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

167.   Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

168.   One or more of the Defendants told WHNT CBS news the Plaintiff charged the deputies with a knife, punched the deputies in the face, and head.

169.   Body Camera footage shows Defendants King, Sloss, Abernathy, and Ryan were the aggressors.

170.   Defendants made no effort to retract the statements made for publication.

171.   Plaintiff's reputation is tarnished and may never recover in the community

as the publication is on the internet and was publicized on television.

## TENTH CLAIM FOR RELIEF

## STATE LAW CLAIM

### False Imprisonment - §6-5-170 Code of Alabama, 1975 as amended

### (Against Blakely, Sloss, Simmons, McNatt, King, Abernathy, and Ryan)

172.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

173.   Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, James Doe, John Doe, Jim Doe, and Ryan were all acting under color of state law in their actions and inactions at all times relevant to this action.

174.   In violation of §6-5-170 Code of Alabama, 1975 as amended, Defendants Blakely, Sloss, Simmons, McNatt, King, Abernathy, Ryan, James Doe, Jim Doe, and John Doe held the Plaintiff in unlawful detention for more than one week.

175.    At no relevant time did Defendants Sloss, King, Abernathy, and Ryan have any legal authority to detain the Plaintiff in his room in his residence.

176.   At no relevant time did Defendants Blakely, Simmons, and McNatt have any legal authority to authorize and supervise the unlawful detention of the Plaintiff.

177.   At no relevant time did Defendants James Doe, John Doe, and Jim Doe have any legal authority to forcibly strip search and detain the Plaintiff at the Limestone County Jail.

178.   As a result of his false imprisonment, Plaintiff suffered and continues to suffer mental and emotional distress and exacerbation of his PTSD, anxiety, and depression.

## TENTH CLAIM FOR RELIEF

## STATE LAW CLAIM

## Slander Per Se - §6-5-180 Code of Alabama, 1975 as amended

## (Against Simmons, King, and Abernathy)

179.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

180.   Defendants Simmons, King, and Abernathy were all acting under color of state law in their actions and inactions at all times relevant to this action.

181.   Simmons and Abernathy falsely claimed that the Plaintiff assaulted Limestone County Sheriff's deputies by charging at deputies with a knife and punching them.

182.   Defendant King falsely claimed Plaintiff charged at him with a knife in the State Case and in his police report.

183.   The body camera footage shows Defendants Simmons, Abernathy, and King lied.

184.   Plaintiff's reputation has been damaged beyond all bounds of decency in a civilized society and has suffered and continues to suffer exacerbation of his

PTSD, anxiety, and depression from Defendant Simmons, King, and Abernathy's actions.

## ELEVENTH CLAIM FOR RELIEF

## 42 U.S.C. § 12132, *et seq*. – Violation of Title II of the Americans with Disabilities Act of 1990, as Amended

## Unlawful Discrimination and Failure to Reasonably Accommodate

## (Against All Defendants)

185.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

186.   Defendants Limestone County Commission, Blakely, Simmons, McNatt, King, Ryan, James doe, John Doe, Jim Doe, and Abernathy were all acting under color of state law in their actions and inactions at all times relevant to this action.

187.   The Americans with Disabilities Act (hereinafter referred to1 as the "ADA"), 42 U.S.C.§§12101 et seq., and specifically 42 U.S.C.§§ 12131-12134, prohibits discrimination in public services on the basis of disability.  42 U.S.C. § 12132 provides:

> Subject the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

188.   The ADA defines a "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or local government, 42 U.S.C. § 12131 (1).   The LCSD, the Jail, and Limestone County each are a "public entity" within the meaning of the ADA.

At all relevant times, Plaintiff was a person with a disability that substantially limits one or more of his major life activities, had a record of a disability, including but not limited to, PTSD, anxiety, suicidal ideation, and depression, or was regarded as having a disability by Defendants.

189.   Plaintiff, with or without reasonable modifications to rules, policies, or practices, met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the Defendants.   Thus, Plaintiff was a "qualified individual with disabilities" within the meaning of the ADA, 42 U.S.C. § 12131 (2).

190.   Plaintiff was qualified to participate in the services, programs, activities, and benefits provided to arrestees and detainees at the Jail within the meaning of Title II of the ADA.

191.   Defendants were on notice regarding Plaintiff's potentially suicidal state of mind, PTSD, depression, and anxiety.

192.   Defendants targeted and discriminated against Plaintiff on the basis of his disabilities and failed to reasonable accommodate his disabilities despite knowing

that he suffered from a number of disabilities, including but not limited to, PTSD, depression, anxiety, and suicidal ideation.

These actions and inactions violated clearly established law under Title II of the ADA and its implementing regulations.

193.   Defendants had no legitimate basis for violating Plaintiff's rights conferred by the ADA.

194.   The actions of Defendants were objectively unreasonable in light of the circumstances confronting them.

195.   Defendants engaged in these actions and inactions intentionally, willfully, and wantonly.

196.   Defendants actions and inactions were the proximate and legal cause of Plaintiff's injuries.

197.   At all times relevant herein, the actions of Defendants were engaged in pursuant to the custom, policy, and practice of Limestone County.

198.   The Limestone County Defendants failed to properly train, supervise, and/or discipline their employees regarding the proper treatment of, and accommodations for, individuals with disabilities and, in particular, mental disabilities.

199.   This inadequate training, supervision, and/or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives which are available to the Limestone County Defendants.

200.   In light of the duties and responsibilities of the Limestone County Defendants' personnel, the need for specialized training, supervision, and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of Constitutional rights, such as those described herein, that Defendants, respectively in their official capacities, are liable for their failure to properly train, supervise, and/or discipline their subordinate employees and agents.

201.   Such failure to properly train and supervise caused the violations of Plaintiff's federally-protected rights described herein, and constitutes and unconstitutional policy, procedure, custom and/or practice.

202.   Plaintiff has And continues to be damaged by Defendant's unlawful conduct under the ADA.

## TWELFTH CLAIM FOR RELIEF

### STATE CLAIM

### Civil Conspiracy

### (Against All Defendants)

195.   Plaintiff incorporates all other paragraphs of this complaint as if fully set forth herein.

196.   Defendants Limestone County Commission, Blakely, Simmons, McNatt, King, Ryan, James doe, John Doe, Jim Doe, and Abernathy were all acting under

color of state law in their actions and inactions at all times relevant to this action.

197.   The Defendants unlawfully, immorally, and oppressively conspired when they falsely accused plaintiff of a crime, falsely arrested/seized him, falsely imprisoned/detained him, and violated his civil rights as is shown in the previous Claims for Relief listed herein above;

198.   The Defendants conspired to:

     a.    entered the plaintiff's home,

     b.    entered plaintiff's room within his home,

     c.    assaulted plaintiff until he was unconscious,

     d.    illegally arrested/seized plaintiff,

     e.    falsely imprisoned/detained plaintiff,

     f.    refused to make reasonable accommodations for plaintiff under the ADA,

     f.    refused to oversee/provide training that would prevent any of the above from happening by having standard operating procedures and refresher courses to know how to safeguard civil rights of citizens such as the plaintiff.

WHEREFORE, above premises considered, Plaintiff respectfully requests this Honorable Court enter judgment in his favor against the Defendants jointly and severally, and award Plaintiff Edward Ronald Jones all relief allowed by law

and equity, including, but not limited to the following:

a.   Declaratory Relief and injunctive relief, as appropriate;

b.   Actual economic damages as established at trial;

c.   Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and medical bills;

d.   Punitive Damages for all claims as allowed by law in an amount to be determined at trial;

e.   Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

    i.   Issuance of a formal written apology by each Defendant to the Plaintiff;

    ii.   The imposition of policy changes designed to avoid future similar misconduct by all Defendants;

    iii.   The imposition of disciplinary action against appropriate employees of Limestone County Defendants;

f.   Pre-judgment and post judgment interest at the highest lawful rate;

g.   Attorney's Fees and Costs;

h.   Such further relief as justice requires but that may not have been

specifically plead herein.

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY**

**ON ALL TRIABLE ISSUES**

Respectfully submitted,

s/Michael C. Lambert (ASB-2138-C53L)
Attorney for the Plaintiff
Lambert Law Firm, LLC
112 West Market Street
Athens, Alabama 35611
Ph 256-431-4129
Email:  mlambert005@yahoo.com