# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **EDWARD RONALD JONES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.: 5:21-cv-00397-MHH** |
| **COUNTY OF LIMESTONE, ALABAMA, et al.,** | } | |
| | } | |
| **Defendants.** | } | |
| | } | |

## MEMORANDUM OPINION AND ORDER

In this action, plaintiff Edward Jones (who goes by Beau) alleges that the Limestone County Commission, Sheriff Michael Blakely, six law enforcement officers, and three correctional officers violated his constitutional rights during his arrest and detention because the arrest was unlawful, and the officers used excessive force against him.  Mr. Jones seeks relief for the alleged constitutional violations under 42 U.S.C. § 1983.  Mr. Jones also brings related state law claims and another federal claim under the Americans with Disabilities Act.  The Limestone County Commission has asked the Court to dismiss the claims against it because the Commission does not have authority to control the conduct of the law enforcement officers or the operations at the county jail.  (Doc. 9).  Sheriff Blakely and the other

officers seek dismissal of several claims against them.[1]  The officers argue that they are entitled to qualified immunity with respect to Mr. Jones's federal law claims and state immunity with respect to his state law claims.  (Docs. 11, 14).  This opinion resolves the defendants' motions to dismiss.

The opinion begins with a discussion of the standard that a district court uses to evaluate Rule 12(b)(6) motions to dismiss.  Then, consistent with that standard, the Court identifies the factual allegations in Mr. Jones's complaint, describing them in the light most favorable to Mr. Jones.  Finally, the Court evaluates Mr. Jones's factual allegations under the legal standards that govern the defendants' arguments for dismissal.

## I.

Rule 12(b)(6) enables a defendant to move to dismiss a complaint or a claim within a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is

---

[1] Besides Sheriff Blakely, Mr. Jones brings claims against six law enforcement officers:  Chief Deputy Fred Sloss, Patrol Captain Guy Simmons, Investigator Jamie King, Deputy Jake Abernathy, Sergeant Commander Rhett McNatt, and Deputy Caleb Ryan.  Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt ask the Court to dismiss all claims against them.  Chief Deputy Sloss, Officer King, Deputy Abernathy, and Deputy Ryan ask the Court to dismiss all claims against them except three § 1983 claims.

entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).[2]

## II.

In his complaint, Mr. Jones alleges that two members of the Limestone County Sheriff's Department, Officer Jamie King and Deputy Sheriff Jake Abernathy, entered the house where he was living on the evening of March 17, 2020. (Doc. 1, pp. 5, 7, ¶ 14, 18, 33). Mr. Jones lived at the house with his grandmother. (Doc. 1, p. 7, ¶ 29). Following his return from several years of active military service, Mr.

---

[2] Mr. Jones alleges that some of the events at issue in this case were recorded by Deputy Abernathy's body camera. (Doc. 1, p. 7, ¶ 34).

Jones moved in with his grandmother after he and his wife divorced. (Doc. 1, p. 6, ¶¶ 25, 26). Mr. Jones has struggled to re-adapt to civilian life. (Doc. 1, p. 6, ¶¶ 26, 27). The VA has diagnosed Mr. Jones with depression, PTSD, and hearing loss. (Doc. 1, p. 6, ¶ 27).

According to Mr. Jones, Officer King and Deputy Abernathy arrived at his grandmother's house at 6:45 p.m. in response to "a call of suspected drug use." (Doc. 1, p. 7, ¶ 33).[3] Officer King was a narcotics investigator. (Doc. 1, p. 5, ¶ 14). Outside, the officers "were met by Mike Jones, Mr. Jones' father." (Doc. 1, p. 8, ¶ 36). Mike Jones told the officers that "he saw Mr. Jones place a flame under a spoon on the front porch . . . and [then] go back inside." (Doc. 1, p. 8, ¶ 37). Mike Jones explained that he did not live at the property, and he did not know who owned the property, but he acknowledged that the house was family property, and he gave Officer King and Deputy Abernathy permission to enter. (Doc. 1, p. 8, ¶¶ 38-41). Mike Jones directed the officers to Mr. Jones's room. (Doc. 1, p. 8, ¶¶ 41-44). Mike Jones told the officers that he did not believe his son was armed. (Doc. 1, p. 8, ¶ 43).

Officer King and Deputy Abernathy entered the house with their weapons drawn. (Doc. 1, p. 9, ¶ 46). They did not announce their presence until they reached

---

[3] Elsewhere in his complaint, Mr. Jones alleges that a subpoena for EMS records "revealed that no 911 call was made" to his grandmother's house on March 17, 2020. (Doc. 1, p. 8, ¶ 45). The Court cannot tell whether Mr. Jones suggests that no one actually called law enforcement on the night of March 17, 2020. Mr. Jones does not identify the caller in his complaint.

the door to Mr. Jones's room where Mr. Jones was "sanding his guitar." (Doc. 1, p. 7, 9, ¶¶ 30, 50).[4] "[R]ealizing someone was in his home about to enter his room, Mr. Jones picked up a knife and retreated behind a table in [the] room." (Doc. 1, p. 9, ¶ 53). The officers went to the doorway of Mr. Jones's room, aimed their weapons at Mr. Jones, and said, "What's up Beau?" (Doc. 1, p. 9, ¶ 48). "Mr. Jones repeatedly asked the [officers] to leave the home and refused to grant . . . entry into his bedroom." (Doc. 1, p. 10, ¶ 56). "Mr. Jones asked [Officer] King if he saw or smelled drugs. [Officer] King responded that he did not." (Doc. 1, p. 10, ¶ 60).

Over the next hour and a half, four more LCSD officers arrived at the house, namely Patrol Captain Simmons, Sergeant McNatt, Chief Deputy Sloss, and Deputy Ryan. (Doc. 1, p. 10, ¶ 55). As they gathered outside of the house, the officers plotted how best to remove Mr. Jones from his room. (Doc. 1, pp. 11, 13, ¶¶ 63, 73). None of them applied for a search warrant, and there is no evidence that any of them found drugs in the house. (Doc. 1, pp. 10-11, ¶¶ 60-62). Ultimately, Officer King called Sheriff Blakey who placed on the phone an inmate at the Limestone County Jail with romantic ties to Mr. Jones. (Doc. 1, pp. 11, 12, ¶¶ 64, 66). It appears from the complaint that Officer King, standing outside the doorway to Mr. Jones's room,

---

[4] Mr. Jones alleges that Officer King knew or should have known that he has PTSD and, therefore, should have known that the officers' entry into his home created a dangerous situation. (Doc. 1, p. 9, ¶ 52). Mr. Jones does not allege facts to support his allegation that Officer King knew or should have known that he has PTSD. Therefore, the Court does not credit that conclusory allegation.

informed Mr. Jones that the inmate was on the phone and offered Mr. Jones the phone. (Doc. 1, p. 11, ¶ 65). Mr. Jones refused to take the phone from Officer King, so Officer King placed the phone inside the room. (Doc. 1, p. 12, ¶¶ 66-67). When Mr. Jones approached the doorway and attempted to return the phone, Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan entered the room without permission. (Doc. 1, p. 12, ¶ 68).

When the officers entered the room, Mr. Jones assumed a defensive position, holding out both arms to push Officer King away from him. (Doc. 1, p. 15, ¶ 81). Mr. Jones reports that Officer King can be heard in a recording stating that Mr. Jones did not have a weapon on him. (Doc. 1, p. 14, ¶ 80).[5] The four officers beat Mr. Jones. (Doc. 1, p. 13, ¶ 74). One of the officers placed Mr. Jones in a headlock and choked him until he lost consciousness. (Doc. 1, pp. 13, 14, ¶¶ 74-77).[6] After being placed in a headlock but before losing consciousness, Mr. Jones told the officers that he could not breathe. (Doc. 1, p. 15, ¶ 81).

Two of the officers transported Mr. Jones to Limestone County Jail. (Doc. 1, p. 15, ¶ 82). There, Mr. Jones was "threatened by James Doe and John Doe" before

---

[5] Mr. Jones alleges that "an employee of LCSD would later write in his official report that Mr. Jones was reaching for a weapon during the altercation," but video footage contradicts the report. (Doc. 1, p. 15, ¶ 81).

[6] Initially, Mr. Jones states that "he was placed in a headlock by one of the deputies." (Doc. 1, p. 14, ¶ 77). Later in the complaint, Mr. Jones states that "[Chief Deputy] Sloss . . . plac[ed] [him] in a headlock." (Doc. 1, p. 15, ¶ 81).

being "forcibly strip searched by James Doe[,] Jim Doe, and John Doe while a Taser was held to his neck." (Doc. 1, p. 15, ¶¶ 83, 84).[7] Mr. Jones was held at the jail for more than a week and kept on suicide watch because the arrest triggered his PTSD. (Doc. 1, pp. 15, 29, ¶¶ 85, 156). Mr. Jones was not allowed to see his attorney, and the only medical attention he received was from the "jailhouse nurse" who did not make a record of his injuries. (Doc. 1, pp. 15-16, ¶¶ 85, 86). Mr. Jones was not allowed to see a mental health care provider. (Doc. 1, p. 28, ¶ 149).

Mr. Jones was charged with "one count of Resisting Arrest and two counts of Assault 'with intent to prevent a peace officer . . . from performing a lawful duty.'" (Doc. 1, p. 13, ¶ 75). Ultimately, "Mr. Jones was indicted for two counts of assault in the second degree for 'attacking [Officer] King and [Deputy] Abernathy' and 'resisting arrest.'" (Doc. 1, p. 16, ¶ 87). The state trial court "dismissed the assault charges and resisting arrest charge . . . labeling the situation an illegal arrest." (Doc. 1, p. 23, ¶ 128).

Against this factual backdrop, the Court considers the affirmative defenses the defendants raise in their motions to dismiss.[8]

---

[7] James Doe, Jim Doe, and John Doe are correctional officers for Limestone County. (Doc. 1, p. 5, ¶ 20).

[8] Citing *Kirkland v. County Comm'n of Elmore County, Alabama*, 2009 WL 596538 (M.D. Ala. Mar. 6, 2009), the defendants argue that Mr. Jones has abandoned his claims because he did not respond extensively to their motions to dismiss. Mr. Jones's brief in opposition to the defendants' motions to dismiss is relatively short, but his attorney cited authority and offered some response to the defendants' motions. (Doc. 23, pp. 2-7). Mr. Kirkland did not respond to the defendant's

### III.

### Limestone County Commission

Mr. Jones asserts five claims against the Limestone County Commission: "Unlawful Seizure/False Arrest" under the Fourth Amendment, (Doc. 1, p. 19); "Excessive Force (Pretrial Detention)" under the Fourth Amendment, (Doc. 1, p. 27); "Excessive Force (Pretrial Detention)" under the Fourteenth Amendment, (Doc. 1, p. 28); "Unlawful Discrimination and Failure to Reasonably Accommodate" under Title II of the Americans with Disabilities Act, (Doc. 1, p. 34); and "Civil Conspiracy" under state law, (Doc. 1, p. 37).

Mr. Jones's federal claims against the Commission rest on his contention that the Commission funds the Limestone County Sheriff's Department and supervises the members of the LCSD involved in this lawsuit "through its budget process." (*See* Doc. 1, p. 27, ¶ 144).[9]  "[A] local government is liable under § 1983 for its policies

---

motion at all, so the district court dismissed Mr. Kirkland's claims.  *Kirkland*, 2009 WL 596538, at *1.  Because of the procedural differences in the two cases, the non-binding *Kirkland* decision is distinguishable.  On the record in this case, the Court does not find that Mr. Jones has abandoned his claims.

[9] In his claim for relief under the Fourth Amendment for unlawful seizure/false arrest, Mr. Jones alleges that the "Limestone County Commission knows of the lack of training, reference material, and standard operating procedures in the LCSD that would have prevented this conduct."  (Doc. 1, p. 21, ¶ 118).  In his claim for relief under the Fourth Amendment for excessive force while incarcerated, Mr. Jones alleges that the Limestone County Commission does not "have a standard operating procedure or guide manual regarding . . . the handling of inmates with the Limestone County Jail."  (Doc. 1, pp. 27-28, ¶ 145).  In his claim for relief under Title II of the ADA for unlawful discrimination and failure to reasonably accommodate, Mr. Jones alleges that the defendants operated "pursuant to the custom, policy, and practice of Limestone County" and that Limestone County "failed to properly train, supervise, and/or discipline their employees regarding

that cause constitutional torts.  These policies may be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784 (1997) (internal quotation marks omitted) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  But "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control.  A local government must have power in an area in order to be held liable for an official's acts in that area." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (internal quotation marks omitted).

Here, the Limestone County Commission does not have authority to control the actions of the Limestone County Sheriff or his officers.  Alabama county commissions "cannot instruct the sheriff how to ferret out crime, how to arrest a criminal, or how to secure evidence of a crime." *McMillian*, 520 U.S. at 790.  Rather, sheriffs and their deputies represent the State of Alabama, not individual counties. *McMillian*, 520 U.S. at 793.  Similarly, the Commission does not have authority to control the operation of the county jail.  "Under Alabama law, a county is not responsible for the daily administration or operation of a county jail or for overseeing inmates." *Ex parte Sumter County*, 953 So.2d 1235, 1238 (Ala. 2006).  "The duties

---

the proper treatment of, and accommodations for, individuals with disabilities and, in particular, mental disabilities."  (Doc. 1, p. 36, ¶¶ 197, 198).

of the counties with respect to the jails are limited to funding the operation of the jail and to providing facilities to house the jail." *Sumter County*, 953 So.2d at 1238 (internal quotation marks omitted).  Thus, Alabama county commissions "cannot be held liable for any action resulting from the hiring, training, or supervising of jail personnel." *Sumter County*, 953 So.2d at 1238.  Consequently, the Court will dismiss the federal claims against the Limestone County Commission.

Mr. Jones's state law conspiracy claim against the Commission also fails.  "It is well established that 'liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy.'" *Ex parte Alabama Dep't of Transp.*, 764 So.2d 1263, 1271 (Ala. 2000) (quoting *Jones v. BP Oil Co.*, 632 So.2d 435, 439 (Ala. 1993)).  As discussed above, the alleged underlying wrong – the arrest and detention of Mr. Jones – provides no cause of action against the Limestone County Commission. Thus, the Court will dismiss the civil conspiracy claim against the Limestone County Commission, eliminating the Commission as a defendant in this action.

### Law Enforcement Officers

Mr. Jones brings 13 claims against the individual defendants:  eight constitutional claims under § 1983, one claim under Title II of the Americans with Disabilities Act, and four state law claims.  The constitutional claims are "Failure to Intervene in Unlawful Seizure/False Arrest" under both the Fourth and Fourteenth

Amendment, (Doc. 1, p. 17);[10] "Unlawful Seizure/False Arrest" under the Fourth

Amendment, (Doc. 1, p. 19);[11] "Malicious Prosecution" under the Fourth

Amendment, (Doc. 1, p. 21);[12] "Excessive Force (Arrest)" under the Fourth

Amendment, (Doc. 1, p. 23);[13] "Excessive Force (Arrest)" under the Fourteenth

Amendment, (Doc. 1, p. 25);[14] "Excessive Force (Pretrial Detainee)" under the

Fourth Amendment, (Doc. 1, p. 27);[15] Excessive Force (Pretrial Detainee)" under

the Fourteenth Amendment, (Doc. 1, p. 28);[16] and "Trespass – Right to Privacy"

under the Fourth Amendment, (Doc. 1, p. 30).[17]   The state law claims are for libel,

---

[10] Mr. Jones brings this claim against all seven law enforcement officers.  Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt move to dismiss.

[11] Mr. Jones brings this claim against all seven law enforcement officers.  Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt move to dismiss.

[12] Mr. Jones brings this claim against all seven law enforcement officers.  All seven move to dismiss.

[13] Mr. Jones brings this claim against all seven law enforcement officers.  Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt move to dismiss.

[14] Mr. Jones brings this claim against all seven law enforcement officers.  All seven move to dismiss.

[15] Mr. Jones brings this claim against Sheriff Blakely and the three correctional officers.  Sheriff Blakely moves to dismiss.

[16] Mr. Jones brings this claim against Sheriff Blakely and the three correctional officers.  Sheriff Blakely moves to dismiss.

[17] Mr. Jones brings this claim against all seven law enforcement officers.  All seven move to dismiss.

(Doc. 1, p. 31);[18] false imprisonment, (Doc. 1, p. 32);[19] slander per se, (Doc. 1, p. 33);[20] and civil conspiracy, (Doc. 1, p. 37).[21]   The Court first addresses the constitutional claims, then the ADA claim, and finally the state law claims.

*Qualified Immunity*

The officers argue that they are immune from Mr. Jones's § 1983 claims for constitutional violations.   "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   A defendant who asserts the defense of qualified immunity must establish that he was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."   *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).   If the

---

[18] Mr. Jones brings this claim against all seven law enforcement officers.  All seven move to dismiss.

[19] Mr. Jones brings this claim against all seven law enforcement officers.  All seven move to dismiss.  Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan rely exclusively on state immunity.

[20] Mr. Jones brings this claim against Officer King, Patrol Captain Simmons, and Deputy Abernathy.  All three move to dismiss.

[21] Mr. Jones brings this claim against all seven law enforcement officers and all three correctional officers.  The law enforcement officers move to dismiss.

defendant succeeds, then the burden shifts to the plaintiff to show that the defendant is not immune from suit. *Loftus*, 690 F.3d at 1204. To carry that burden, a plaintiff must establish that the defendant violated his (the plaintiff's) constitutional rights and that the constitutional rights violated were "clearly established" at the time of the alleged wrongdoing. *Loftus*, 690 F.3d at 1204.

With respect to the defendant's initial burden to "establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). "In other words, '[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Estate of Cummings*, 906 F.3d at 940 (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

Here, when Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan entered Mr. Jones's house and eventually arrested him, they were acting within the scope of their discretionary authority. They were performing the job-related functions of investigating a tip of illegal drug use. Patrol Captain Simmons and Sergeant Commander McNatt were at the scene to supervise LCSD officers. Sheriff

Blakely was acting within the scope of his discretionary authority while supervising his staff remotely and assisting Officer King in his efforts to remove Mr. Jones from his room following reported drug use. Additionally, Sheriff Blakely was performing the job-related functions of running the LCSD and the county jail. The Court is not aware of law which places the officers' alleged conduct beyond their power. *Estate of Cummings*, 906 F.3d at 940. Therefore, Sheriff Blakely and the officers have satisfied their initial burden of establishing that they acted within their discretionary authority.

Therefore, to avoid the affirmative defense of qualified immunity, Mr. Jones must establish that the constitutional rights that Sheriff Blakely and the officers allegedly violated were clearly established on March 17, 2020 and during the week that followed. In his brief in opposition to the defendants' motions to dismiss, Mr. Jones, through his attorney, acknowledges that the burden is his. (Doc. 23, p. 2). In his brief, Mr. Jones reiterates several points concerning Sheriff Blakely that he raised in his complaint. Mr. Jones argues that "[Sheriff] Blakely directly participated in baiting [Mr.] Jones toward the Defendant deputies who attacked him by providing a prisoner in Limestone County custody to talk to [Mr.] Jones on [Officer] King's . . . phone," (Doc. 23, pp. 5-6); Sheriff Blakely was "acutely aware of the lack of awareness or care for citizens' constitutional rights . . . by the law enforcement personnel under his command," (Doc. 23, p. 6); and Sheriff Blakely

"had an obligation as a direct supervisor who was directly involved in real time to ensure [Mr. Jones's] Constitutional rights were protected," (Doc. 23, p. 6). Mr. Jones also states generally that "all the law enforcement defendants violated [Mr. Jones's] clearly established constitutional rights to be safe from unlawful seizure, arrest, prosecution, and excessive force when they committed the acts alleged in the complaint." (Doc. 23, p. 6). That is the only argument Mr. Jones advances in his response brief against the other six law enforcement officers.

In his brief in opposition to the defendants' motions to dismiss, Mr. Jones's discussion of the applicable constitutional principles that would place objectively reasonable officers on notice that their conduct violated federal law consists entirely of this:

### B.    Qualified Immunity – Sheriff, deputies, and jailers

For qualified immunity to apply, "first, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." Harbert Int'l v. James, 157 F.3d 1271, 1281 (11th Cir. 1998)[.]

### C.    Searches and Seizures

Fourth Amendment assures defendant not that no government search of his house will occur unless he consents, but rather that no search will occur that is "unreasonable." Illinois v. Rodriguez, 497 U.S. 177 (1990) quoting 4th Amendment to the United States Constitution. The 4th Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. Illinois v. Rodriguez, 497 U.S. 177 (1990) quoting Payton v. New York,

445 U.S. 573, 100 S.Ct. 1371 (1980); <u>Johnson v. United States</u>, S.Ct.
367 (1948)[.]

(Doc. 23, pp. 2-3). With respect to warrantless entry into a home, the Court surmises that Mr. Jones likely would argue that his father did not have the authority to invite officers into the house where Mr. Jones lived with his grandmother, but Mr. Jones acknowledges in his complaint that his father told Officer King and Deputy Abernathy that the house was family property and that they could enter. Mr. Jones has not identified an appellate decision that would put a reasonable officer on notice that he would need a search warrant or an arrest warrant to enter a house under those circumstances. Therefore, Mr. Jones has not carried his burden to overcome the officers' defense of qualified immunity with respect to their initial entry into the house, and the Court will dismiss Mr. Jones's Fourth Amendment trespass claim.

In his brief in opposition to the officers' motions to dismiss, Mr. Jones does not cite authority regarding his allegations of false arrest, excessive force, or failure to intervene. As to Mr. Jones's false arrest claims, Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan have not moved to dismiss on the basis of qualified immunity. Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt have. Factually, Mr. Jones alleges that Patrol Captain Simmons and Sergeant Commander McNatt "approved and help[ed] plan the seizure of Mr. Jones," (Doc. 1, p. 12, ¶ 69), a plan which several officers allegedly developed while meeting outside of Mr. Jones's house. Mr. Jones acknowledges that Sheriff Blakely

was not at the scene.  (Doc. 1, p. 10, ¶ 55).  According to Mr. Jones, Sheriff Blakely made an inmate at the Limestone County Jail available to speak to Mr. Jones by phone.  (Doc. 1, p. 11, ¶ 64).  Additionally, Mr. Jones alleges that "[Sheriff] Blakely knew that the other defendants had no basis to be in Mr. Jones'[s] home much less to bait him to come near the entrance to be attacked by the defendants."  (Doc. 1, p. 11, ¶ 64).

Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt are entitled to qualified immunity on Mr. Jones's false arrest claim because Mr. Jones has not cited a materially similar case that was decided by the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Alabama Supreme Court that would give those three officers notice that the conduct in which they allegedly engaged violated Mr. Jones's constitutional rights.  *Loftus*, 690 F.3d at 1204.  Similarly, in his brief, Mr. Jones does not "point to a broader, clearly established principle [that] should control the novel facts [of the] situation," and he does not argue that any of the conduct "so obviously violate[s] th[e] constitution that prior case law is unnecessary."  *Loftus*, 690 F.3d at 1204-05 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012)).

The limited discussion of constitutional case law in Mr. Jones's brief does not help him because the Eleventh Circuit has said that a district court may not rely on general propositions of constitutional law when evaluating an officer's claim of

qualified immunity.  In *Minnifield v. City of Birmingham Dep't of Police*, 791 Fed.

Appx. 86 (11th Cir. 2019), the Eleventh Circuit stated:

> The district court assumed that [the plaintiff] asserted the right to be free from racial discrimination and retaliation in the workplace. However, this formulation was too broad.  Defining the law at this "high level of generality" for qualified immunity purposes is discouraged by the Supreme Court.  The proper inquiry is whether it was clearly established law that failing to recommend an employee for a lateral transfer to a position (offering the same pay but more prestige) is an adverse employment action for purposes of disparate treatment and retaliation claims.  This formulation "particularizes" the question to the circumstances and answers whether then-existing law put [the defendant] on "fair notice" that his actions violated [the plaintiff's] rights.

*Minnifield*, 791 Fed. Appx. at 92 (internal citation omitted); *see also Nicholson v.*

*Georgia Dep't of Human Resources (DHR)*, 918 F.2d 145, 147 (11th Cir. 1990)

("[T]he plaintiff must draw the court's attention toward a more particularized and

fact specific inquiry.").  Thus, Mr. Jones's allegation that "all the law enforcement

defendants violated [his] clearly established constitutional rights to be safe from

unlawful seizure, arrest, prosecution, and excessive force when they committed the

acts alleged in the complaint," (Doc. 23, p. 6), is insufficient to overcome qualified

immunity because it recites only broad principals of constitutional law.  *See*

*Hampton v. Hamm*, 2022 WL 69214, *8 n.10 (M.D. Ala. Jan. 6, 2022) ("Plaintiff's

failure to cite any cases or sources of law in her brief is an independent reason for

granting qualified immunity, as it is Plaintiff's burden to show, by citation to

relevant law, that the unlawfulness of Defendants' conduct was clearly established

at the time of the alleged violation.).  Thus, the Court will dismiss Mr. Jones's false arrest claim against Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt on the basis of qualified immunity.

With respect to Mr. Jones's allegation that Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan beat him and therefore used excessive force, those officers have not moved to dismiss Mr. Jones's Fourth Amendment claim, presumably because they recognize that in the Eleventh Circuit, the defense of qualified immunity is not available with respect to alleged use of excessive force in violation of the Fourth Amendment.  As the Eleventh Circuit has held, the use of force "maliciously and sadistically to cause harm" is clearly a violation of the Constitution.  *See Johnson v. Breeden*, 280 F.3d 1308, 1315 (11th Cir. 2002); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002); *Dobbins v. Giles*, 451 Fed. Appx. 849, 851 (11th Cir 2012) (holding that when a plaintiff asserting an excessive force claim "has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment demonstrating that the officer used force maliciously and sadistically to cause harm, he has necessarily established the two prongs required to defeat a defense of qualified immunity") (internal quotation marks omitted).  The same is true of officers who witness the malicious and sadistic use of force and fail to intervene.  *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) ("If a police officer, whether supervisory or not, fails or refuses to intervene

when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.") (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) (alterations omitted)).

Regarding his excessive force claims against Patrol Captain Simmons and Sergeant Commander McNatt, Mr. Jones does not allege that either officer was ever inside the house, let alone involved in the alleged beating in his room. Mr. Jones's factual allegations against Patrol Captain Simmons and Sergeant Commander McNatt are as follows:

55.   Over the next 1.5 hours all the defendants arrived at the Property except [Sheriff] Blakely and the Commission.

62.   At some point in time, other employees from LCSD were called to the home to assist. It is unclear whether anyone on the scene attempted to look for the drugs and/or paraphernalia that Mr. Jones's father said he saw; however, it is clear that none were found and none were taken into evidence.

69.   [Sheriff] Blakely, [Patrol Captain] Simmons, [Deputy] Abernathy, and [Sergeant Commander] McNatt outranked the other deputies on scene and both approved and help[ed] plan the seizure of Mr. Jones.

73.   At approximately 1 hour, 40 minutes into the video, LCSD employees meet outside the home of Mr. Jones and discuss the "three options," which were "(1) Chief's (Fred Sloss) gonna talk to him. Maybe he'll come out, probably not; (2) Leave him here, get grandma and family and move all them out, leave him here by himself, get him another day; and (3) Number three is we'll use that "big orange shotgun right there," pointing to a shotgun which had been left unattended next to the door. Almost a minute later, [Deputy] Abernathy, who had been standing inside the entire time and was the one wearing the body camera, told [Patrol Captain] Simmons that when Mr. Jones got up to

get his phone a few moments earlier that was the first time he'd gotten
up.

(Doc. 1, pp. 10, 11, 12, 13, ¶¶ 55, 62, 69, 73).  Without an allegation placing Patrol
Captain Simmons or Sergeant Commander McNatt inside the house, Mr. Jones
cannot maintain a claim against either officer for excessive force or failure to
intervene to prevent a violation of his right to be free from excessive force.  There is
no allegation from which the Court may infer that either officer witnessed or
somehow was aware of the alleged beating.

The same analysis applies with respect to Sheriff Blakely who was not at the
house.  Mr. Jones merely alleges that Sheriff Blakely "knew other options were
available."  (Doc. 1, p. 24, ¶ 125).  Moreover, "supervisory officials are not liable
under § 1983 for the unconstitutional acts of their subordinates on the basis of
respondeat superior or vicarious liability."  *Keith v. DeKalb County, Georgia*, 749
F.3d 1034, 1047 (11th Cir. 2014) (internal quotation marks omitted).  To be sure,
Mr. Jones's allegations as to the officers' lack of training – which Mr. Jones
attributes to Sheriff Blakely – are troubling.  (Doc. 1, p. 16, ¶¶ 90-91).  But by
"fail[ing] to cite any cases or sources of law in [his] brief" regarding his claim that
Sheriff Blakely failed to properly train his subordinates, Mr. Jones has not carried
his burden.  *Hampton*, 2022 WL 69214, *8 n.10.[22]  Therefore, the Court will dismiss

---

[22] Similarly, the Court dismisses Mr. Jones's failure to properly supervise and train claims against
Sheriff Blakely under the Fourteenth Amendment arising out of harm Mr. Jones suffered while in

Mr. Jones's excessive force and failure to intervene claims against Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt.[23]

As to Mr. Jones's malicious prosecution claim, all seven officers have moved to dismiss, asserting qualified immunity. Malicious prosecution involves "a seizure 'pursuant to legal process.'" *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)). The officers argue that Mr. Jones's claim should be dismissed because his "seizure was not pursuant to legal process" and instead "occurred pursuant to a warrantless arrest." (Doc. 15, p. 24). But this argument ignores precedent which states that "seizures following an arraignment, indictment, or probable-cause hearing" can also give rise to a claim for malicious prosecution if, for example, "a judge's probable-cause determination is predicated solely on a police officer's false statements." *Williams*, 965 F.3d at 1158 (quoting *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918

---

jail. (Doc. 1, pp. 28-29, ¶¶ 150-56). Again, Mr. Jones has not cited "cases or sources of law in [his] brief" regarding these claims. *Hampton*, 2022 WL 69214, *8 n.10. The Court also dismisses the same claims brought under the Fourth Amendment, (Doc. 1, pp. 27-28), because such claims are properly brought under the Fourteenth Amendment. *Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018) ("Generally, the Fourth Amendment protects against the use of excessive force during investigatory stops and arrests, while the Fourteenth Amendment guards against the use of excessive force against arrestees and pretrial detainees.").

[23] The Court also dismisses Mr. Jones's Fourteenth Amendment claims for use of excessive force during his arrest against all officers, as the Fourteenth Amendment is not the appropriate vehicle to bring such a claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in *Graham*).

(2017) (internal quotation marks omitted).  Here, Mr. Jones alleges that Officer King "admitted he had no probable cause, i.e. he did not see or smell any drugs, and neither did any other law enforcement official on the day in question."  (Doc. 1, p. 22, ¶ 123).  Mr. Jones also alleges that, in his official report, Officer King lied about Mr. Jones charging at the officers with a knife.  (Doc. 1, p. 10, ¶ 58).  From these allegations, the Court can reasonably infer that Mr. Jones alleges that, at the probable cause hearing in this case, the judge relied on a police officer's false statements, as in *Manuel*.  Additionally, Mr. Jones alleges that the district attorney told Mr. Jones's criminal defense attorney that the only reason he was pursuing the case was because "[Officer] King wanted Mr. Jones in prison."  (Doc. 1, pp. 22-23, ¶ 125).  Reading this factual allegation in the light most favorable to Mr. Jones, the Court may reasonably infer that Officer King put his thumb on the scale, forcing the state criminal case against Mr. Jones to move forward even though it was baseless.  The inference is supported by Officer King's alleged animosity toward Mr. Jones, based at least in part on the fact that Mr. Jones had previously reported Officer King to the Alabama Bureau of Investigation.  (Doc. 1, pp. 9, 12, ¶¶ 51, 71).  Finally, it is worth noting that the officers remained in Mr. Jones home – and spent over an hour plotting how to get Mr. Jones to come out of his room – even though they found no evidence of drug use.  (Doc. 1, p. 10, ¶ 60).

Though Mr. Jones has presented sufficient factual allegations to support his malicious prosecution claim, he again has not carried his burden with respect to the defendants' assertion of qualified immunity.  Malicious prosecution claims brought under § 1983 – when analyzed within the context of qualified immunity – involve the burden shifting framework discussed in this opinion.  *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003).  As noted above, the officers have met their initial burden.  Mr. Jones, in his opposition brief, "fail[ed] to cite any cases or sources of law" regarding his malicious prosecution claim.  *Hampton*, 2022 WL 69214, *8 n.10.  Mr. Jones has not drawn the Court's attention toward a materially similar case in which an officer had an outsized influence on a district attorney choosing to go forward with a criminal prosecution or made false statements during a probable cause hearing.  Additionally, Mr. Jones does not argue that Officer King's conduct – or that of other officers – triggers the "obvious clarity" option for overcoming the affirmative defense of qualified immunity.  Therefore, the Court will dismiss Mr. Jones's malicious prosecution claim against all seven officers, including Officer King.[24]

---

[24] The Court recognizes that malicious prosecution claims seem similar to excessive force claims in that, by their very nature, properly alleged malicious prosecution claims necessarily involve conduct that satisfies the two prongs needed to defeat a defense of qualified immunity.  *See Johnson*, 280 F.3d at 1315; *Dobbins*, 451 Fed. Appx. at 851.  But the Eleventh Circuit applies the standard burden-shifting test to these claims, and Mr. Jones has not met his burden.

Accordingly, because Mr. Jones has not met his burden in response to the officers' assertion of the affirmative defense of qualified immunity, the Court must dismiss claims one through eight against Sheriff Blakely; one through five and eight against Patrol Captain Simmons and Sergeant Commander McNatt; and three, five, and eight against Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan. The federal constitutional claims that remain are claims one, two, and four against Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan.

## ADA Claim

According to Mr. Jones, "Defendants targeted and discriminated against [him] on the basis of his disabilities and failed to reasonabl[y] accommodate his disabilities despite knowing that he suffered form a number of disabilities, including but not limited to, PTSD, depression, anxiety, and suicidal ideation." (Doc. 1, pp. 35-36, ¶ 192). Mr. Jones alleges that he "was never taken to a mental health professional. He was seen by the jailhouse nurse who did not have the expertise to diagnose anything regarding his condition." (Doc. 1, pp. 15-16, ¶ 86). To state a Title II claim, a plaintiff "'generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'" *Jones v. Rutherford*, 546

Fed. Appx. 808, 811 (11th Cir. 2013) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Here, as in *Rutherford*, Mr. Jones "only argues that he was given insufficient medical care" when he was seen by the jailhouse nurse, rather than a mental health professional. *Rutherford*, 546 Fed. Appx. at 811. Importantly, "the ADA is not a 'remedy for medical malpractice' and 'would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Rutherford*, 546 Fed. Appx. at 811-12 (quoting *Schiavo v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005). Accordingly, Mr. Jones fails to state a claim that "he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against." *Rutherford*, 546 Fed. Appx. at 811 (quoting *Bircoll*, 480 F.3d at 1083). Thus, the Court will dismiss the ADA claim against all law enforcement officers.

## State Law Claims

As mentioned above, Mr. Jones brings claims for libel, false imprisonment, and civil conspiracy against all seven law enforcement officers. Mr. Jones also brings a claim for slander per se against Patrol Captain Simmons, Officer King, and Deputy Abernathy. The officers argue that these claims should be dismissed on the basis of state immunity. State immunity, when applicable, is a complete bar to

litigation against the state actor. *Alabama Dep't of Corrections v. Montgomery County Commissioner*, 11 So.3d 189, 191-92 (Ala. 2008).[25]

The Alabama Constitution provides: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. Art. I, § 14. "State officers and employees, in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." *Alabama State University v. Danley*, 212 So.3d 112, 122 (Ala. 2016) (quoting *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989)).

Actions against a sheriff and deputy sheriffs "for damages arising out of the performance of [their] duties [are] essentially [] suit[s] against the state." *Ex parte Davis*, 930 So.2d 497, 501 (Ala. 2005) (internal quotation marks and citations omitted). Throughout his complaint, Mr. Jones alleges that all officers were "acting under color of state law in their actions and inactions at all times relevant to this action." (Doc. 1, pp. 37-38, ¶ 196). Therefore, all officers are entitled to state immunity unless one of the six exceptions applies:

(1) actions brought to compel State officials to perform their legal duties;

(2) actions brought to enjoin State officials from enforcing an unconstitutional law;

---

[25] Here, state immunity, not state-agent immunity, is implicated. "Alabama's State immunity doctrine applies to constitutional officers (including sheriffs and deputy sheriffs) while Alabama's state-agent immunity doctrine applies 'to those state agents or employees whose positions exist by virtue of legislative pronouncement.'" *Shuler v. Duke*, 792 Fed. Appx. 697, 704 (11th Cir. 2019) (quoting *Ex parte Donaldson*, 80 So.3d 895, 900 (Ala. 2011)).

(3) actions to compel State officials to perform ministerial acts;

(4) actions brought against State officials under the Declaratory Judgments Act seeking construction of a statute and its application in a given situation;

(5) valid inverse condemnation actions brought against State officials in their representative capacity; and

(6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law.

*Ex parte Alabama Dep't of Finance*, 991 So.2d 1254, 1256-57 (Ala. 2008) (internal citation omitted).   Because Mr. Jones asserts an action for damages, the only exception that potentially applies is the sixth exception.[26]   The Alabama Supreme Court has restated sixth exception as follows:

> (6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.

---

[26] In his complaint, Mr. Jones requests "Declaratory Relief and injunctive relief, as appropriate," (Doc. 1, p. 39), but Mr. Jones does not indicate what injunctive relief he seeks, either in his complaint or opposition brief.  Given that Mr. Jones no longer is incarcerated and the state law case against him has been dismissed, it does not appear that injunctive relief is available to Mr. Jones.

*Ex parte Moulton*, 116 So.3d 1119, 1141 (Ala. 2013) (internal citations omitted). Exception 6(a) does not apply because this is a damages action. As for exception 6(b), as noted above, actions against sheriffs and deputy sheriffs are actions against the State. Mr. Jones has not stated whether he sues the individual defendants in their individual or official capacities. In addition, Mr. Jones has not explained how any of his claims meet the exception to state immunity available under exception 6(b). Thus, based on the allegations in Mr. Jones's complaint and the silence in his opposition brief, the Court will dismiss the state law claims against the officers.

## CONCLUSION

For the reasons discussed above, the Court dismisses all claims against the Limestone County Commission, Sheriff Blakely, Patrol Captain Simmons, and Sergeant Commander McNatt. The Court dismisses claims three, five, and eight through twelve against Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan. The claims that remain are claims one, two, and four against Officer King, Chief Deputy Sloss, Deputy Abernathy, and Deputy Ryan, and claims six, seven, eleven, and twelve against the three correctional officers who Mr. Jones has not identified yet.

**DONE** and **ORDERED** this March 4, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE